IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

E.C.P, a minor, by and through his next friend, Patricia Portillo Estrada,

      Plaintiff(s),

v.

ADAMS 12 FIVE STAR SCHOOLS

      Defendant(s).

---

## COMPLAINT WITH JURY DEMAND

---

      Plaintiff, E.C.P. ("Plaintiff" or "Student"), a minor, by and through his next friend Patricia Portillo Estrada ("Mother" or "Ms. Portillo Estrada"), hereby respectfully files this action against Adams 12 Five Star Schools District ("Defendant" or "Adams 12"), by and through counsel Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows. This action seeks equitable relief and appropriate damages and costs.

### I.      JURISDICTION AND VENUE

1. The Court has jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

2. Plaintiff is a resident of Adams County, Colorado.

3. Defendant Adams 12 Five Star Schools District has its principal place of business in Adams County, Colorado.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the wrongful acts alleged by the Plaintiff occurred in whole or in part in Colorado.

### II.      PARTIES

5. Plaintiff is a minor student currently enrolled in the Defendant District.

6.  Plaintiff is a disabled individual within the meaning of Section 504 of the United States Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*; and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-24-801 *et seq.* The Plaintiff's intellectual and physical disabilities impair major life activities including, but not limited to, walking, standing, working, learning, reading, concentrating, and communicating.

7.  Defendant Adams 12 is a recipient of federal financial assistance subject to the requirements of Section 504, 34 C.F.R. § 104.11, and a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131, (1)(A), (B).

8.  Adams 12 School Board of Education ("Adams 12 Board" or "Board") is the Board of Education for the Defendant school district. The Board is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 C.F.R. § 104.11, and a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131 (1)(A), (B).

9.  On information and belief, the Board is responsible for ensuring that the District Superintendent complies with all state and federal laws, including disability rights laws.

## BACKGROUND FACTS

10. The Plaintiff is a 12-year-old boy with multiple significant disabilities. These include intellectual disabilities, orthopedic impairments, and speech or language impairments. More specifically, the Plaintiff's disabilities include, but are not limited to, lumbar myelomeningocele, hydrocephaly, bilateral clubfeet, scoliosis, and a foot contracture that required surgery in 2018. These disabilities constitute major impairments to the Plaintiff's functional mobility, and require him to use a wheelchair, walker, or mobility trike.

11. The Plaintiff immigrated to the United States with his Mother, Ms. Portillo Estrada. Both the Plaintiff and his Mother primarily speak Spanish. Accordingly, communications with the Defendant have frequently occurred through interpreters and advocates.

12. At times, the Plaintiff's elementary school, Rocky Mountain Elementary ("RME") utilized District employees as interpreters for Ms. Portillo Estrada. These included both administrative staff and teachers. Otherwise, communications between Ms. Portillo Estrada and her son's school have occurred using free translation services such as Google Translate.

13. As of no later than October 28, 2020, the Defendant has engaged in an ongoing practice of denying the Plaintiff reasonable accommodations for his disabilities, thereby preventing him from meaningfully accessing, participating, and receiving the benefits of education in Adams 12.

14. From at least October 2020 to the present, the Defendant failed to accommodate the Plaintiff by failing to supervise or assist his functional mobility. The Defendant's failure denied the Plaintiff equal access to the benefits of an education within the Defendant's district. Benefits he would have received had he not been disabled.

15. The Defendant's failure to supervise and assist the Plaintiff reached severe heights on May 10, 2022. That day, the Plaintiff suffered bilateral fractures to the tibia and fibula of both legs after losing control of his wheelchair while navigating a ramp within RME—as revealed by RME's internal investigation of the incident.

16. According to RME, no School staff reported the Plaintiff's injury.

17. At least one unidentified School employee discovered the Plaintiff at the bottom of the ramp but did not assist him. Instead, the Plaintiff, a twelve-year-old severely disabled child, was left to collect himself after sustaining serious injuries, and return himself to class.

18. RME's internal report notes that multiple staff members observed the Plaintiff "on the verge of tears throughout the day." However, neither his class teacher, nor any RME employee, took any action to investigate or treat his condition. Nor did any RME staff contact Ms. Portillo Estrada to inform her of the Plaintiff's condition.

19. Ms. Portillo Estrada remained ignorant of the Plaintiff's condition until she picked him up from the bus stop that afternoon.

20. According to RME's own internal review, the Plaintiff was injured at 8:15 AM.[1] School is conducted at RME from 8:05 AM to 3:00 PM. Accordingly, the Plaintiff spent *seven* hours in severe pain before the seeing his Mother. Upon arriving home, Ms. Portillo Estrada took the following photo of the plaintiff:



---

[1] RME later reviewed security camera footage from the day of the Plaintiff's injury which showed the Plaintiff lose control of his wheelchair and strike an opposing wall at approximately 8:15 am. *See supra* at 9, ¶ 40.

21. Upon discovering her son in pain, Ms. Portillo Estrada contacted RME through a text message. In the message, she noted that the Plaintiff stated he suffered a fall at School. RME did not respond to the message.




22. The following day, May 11, Ms. Portillo Estrada kept the Plaintiff home from School, where he continued to experience significant pain. Without knowledge of the accident, and with no information from the School, Ms. Portillo Estrada had no way of knowing the severity of the Plaintiff's injury.

23. When RME finally responded to Ms. Portillo Estrada, RME insinuated that the Plaintiff's pain was due to shoulder discomfort.

24. However, notably, the Plaintiff did not begin to experience significant shoulder or back pain until after the May 10 injury.

25. Regardless of the cause of the Plaintiff's pain, RME took no action to address, treat, or mitigate the Plaintiff's condition throughout the day of May 10. Instead, he was left confined to his wheelchair, with fractured legs.

26. Given the communicative deficits known to the School and recorded in the Plaintiff's Individualized Education Program ("IEP"), when Ms. Portillo Estrada notified RME of the Plaintiff's statement that he fell on the on May 10, 2023, her message should have been sufficient to communicate that the Plaintiff suffered an injury related to his wheelchair while at RME on May 10, if nothing more. However, the School took no action to investigate the Plaintiff's incident, nor the cause of his injury.

27. Representing its belief that the Plaintiff's pain was connected to his shoulder, when Ms. Portillo Estrada contacted the School on May 11, it advised her to take the Plaintiff to a doctor for an examination of his condition. Unfortunately, this was the only action the School took to support the Plaintiff.

28. On May 11, throughout the day the Plaintiff continued to experience severe pain, and his knees swelled extremely. Based on the Plaintiff's pain and swelling, Ms. Portillo Estrada contacted the School. However, the School asserted that the Plaintiff had not suffered any injuries while at RME, and, rather, it insisted that the Plaintiff's pain was due to falling out of bed – a claim allegedly based on a statement by the Plaintiff, which the Plaintiff did not, in fact, make, and which was later disproved by the School's internal investigation.

29. On May 12, 2022, still unaware of the extent of the Plaintiff's injuries, Ms. Portillo Estrada sent him back to RME. A few hours later, RME contacted Ms. Portillo Estrada and demanded she either pick her son up from school due to the pain he was experiencing, or it would call an ambulance to take him to the hospital.

30. Ms. Portillo Estrada rushed to RME and then took her son to an emergency room in Broomfield, Colorado. From there, the Plaintiff was transferred to the Children's Hospital at the Anschutz medical Campus in Aurora, Colorado where he was diagnosed with bilateral fractures.

31. When the Plaintiff's was examined on May 12, his swelling had reached severe levels, as documented by photos taken by Ms. Portillo Estrada:

 

32. The Plaintiff's doctor diagnosed his injuries as bilateral proximal tibial and fibular fractures. Treating the injuries required splinting and immobilizing the Plaintiff's legs:



33. The Plaintiff remained confined to a hospital bed for one week, but thereafter was required to maintain total immobilization in his legs for a further four weeks. Accordingly, the Plaintiff spent more than a month bedridden due to his injuries.

34. Confining the Plaintiff to a bed also caused him to develop highly painful bed sores along his back and bottom.

35. When the Plaintiff was admitted to the Children's Hospital, his injuries were sufficiently severe that Ms. Portillo Estrada and the Plaintiff were interviewed by a clinical social worker based on child safety concerns. However, Milena Hathaway, L.S.W., confirmed that the Plaintiff's injury occurred at school:

---

**ED Notes**

**ED Notes by Hathaway, Milena T., L.S.W. at 5/12/2022 2205**

| Author: Hathaway, Milena T., L.S.W. | Service: — | Author Type: Social Worker O |
|---|---|---|
| Filed: 5/13/2022 12:27 AM | Date of Service: 5/12/2022 10:05 PM | Status: Signed |
| Editor: Hathaway, Milena T., L.S.W. (Social Worker O) | | |

**Social Work Initial Note**

**Reason for referral:** Supportive Counseling

**Referral source:** Medical Provider
**Referral Name:** Veronica Combs, M.D.

**Referral unit:** NOC - North

**Mode of referral:** Verbal

**Identified Concerns:** Child Safety Concerns, Supportive Counseling

**Assessment:** Esdras is an 11-year-old male who was brought to CHCO North Campus ED by MOC with concern for fever and knee swelling. Pt has a complex medical history. CSW was consulted to provide a supportive check in and assess needs.

CSW met with MOC and pt at bedside using Spanish interpreter and introduced self and role. MOC discussed pts injuries and we discussed that pt had reported to several staff members that he had fallen out of his wheelchair at school. Per MOC's report pt attends Rocky Mountain Elementary school. MOC stated that the school did not report a fall. MOC stated that she feels the school generally communicates well with her. She discussed that she has spoken with the school RN many times in the past. We discussed that pt is either at home or at school and MOC denies any falls at home. Pt agrees with MOC and when asked if he fell at school, pt states "yes" that he fell at school. MOC stated pt came home from school Tuesday stating his knees were hurting and after worsening symptoms and pain MOC brought pt to the ED today. We discussed following up with the school regarding questions related to pts injury and potential fall at school. MOC was soft spoken and discussed anxiety related to speaking to the school. CSW provided support and encouraged her to show then medical documentation from hospital visit and she was agreeable to this, but requested possible CSW support if needed. CSW discussed that given the late hour we would not be able to call the school tonight, but CSW explained that she would be informing CSW colleagues of the concerns and they could provide a supportive check in tomorrow to further assess needs. MOC was agreeable to this and thanked CSW for the support.

36. As suggested by Ms. Hathaway, the Plaintiff's injury, the manner of its occurrence, and the School's conduct surrounding the Plaintiff's injury are highly concerning.

37. The School's conduct on, before, and after May 10, 2022 is emblematic of a pattern or practice of neglect and failure to accommodate the Plaintiff's needs as a disabled individual. This pattern or practice is sufficiently severe and pervasive to constitute intentional discrimination against the Plaintiff as a disabled person.

i.   *The Circumstances of the Plaintiff's Injury Manifest the Defendant's Deliberate Indifference to His Federally Protected Rights*

38. On June 1, 2022, Ms. Portillo Estrada and an interpreter, Yulma Sanson ("Ms. Sanson"), met with the Principal of RME, Ms. Kate Vogel. RME emailed a summary of this meeting to Ms. Portillo Estrada through Ms. Sanson on June 8, 2022.

39. Prior to this meeting, RME steadfastly denied any wrongdoing and the fact that any injury to the Plaintiff occurred while at RME under staff supervision. However, upon meeting with Ms. Portillo Estrada, RME Principal Vogel reviewed security camera footage from the morning of May 10, 2022.

40. The footage revealed the Plaintiff, unattended and unsupervised, attempted to navigate a ramp between classrooms. The Plaintiff lost control of his wheelchair due to the impaired muscular control of his right arm. His wheelchair rolled down the ramp, picking up speed, before colliding with an opposing concrete wall. The Plaintiff's knees absorbed the impact.

41. The incident occurred at approximately 8:15 am. RME's office opens at approximately 7:30, with school hours beginning at 7:50 am.[2] Accordingly, the Plaintiff's injury occurred approximately 25 minutes after the start of the school day.

---

[2] Rocky Mountain Elementary School, "About us", available at https://rocky.adams12.org/our-school/about-us

42. As noted, RME authored a summary of this video which it provided to Ms. Portillo Estrada on June 8, 2022. According to the summary, there were no witnesses to the Plaintiff's incident nor injury and the Plaintiff did not self-report the incident to anyone during the school day. The summary is as follows:

On Wed, Jun 8, 2022 at 8:50 AM Mariah Garcia - ESC <gar026396@adams12.org> wrote:

Good morning Yulma,
Here is a summary of what was discussed yesterday and next steps:

- The school principal informed Esdras' mom that after viewing hallway video footage from 5/10/22, it was determined that Esdras was injured at school when he was transitioning between SSN and homeroom. The video shows Esdras losing control of his wheelchair going down a ramp and hitting a wall. There were no witnesses to the incident and Esdras did not report the incident to anyone during the school day.
  - It was reported that the incident happened at 8:15 am. This was after staff noticed his shoulder was sore and he saw the nurse for his sores and mom was called.
  - The RME principal was not aware that Esdras reported hitting a wall on the way to his general education classroom until the initial meeting with the parent and advocate on 6/1. She investigated and pulled video footage after she was informed of this report by the advocate and parent on 6/1.
- After reporting on the school's findings, the advocate and parent asked for a moment to talk.
- Upon returning to the meeting, the advocate voiced concerns that Esdras was allowed to transition independently after complaining of pain. Mom said she doesn't think he should be independent in hallways because his arm is weak anyway. Advocate voiced concerns that signs of pain were missed. He said he was crying and in pain.
- The school did report that Esdras was on the verge of tears throughout the day, but they attributed this to the shoulder pain he complained of at the start of the day and hissoreness. The school communicated concerns with the parent and the parent said she would take Esdras to the doctor on Wednesday. Esdras was not able to see a doctor on Wednesday. He returned to school on Thursday still in obvious pain and the staff observed swelling on his knees. Esdras' mom took him to the doctor on Thursday after school.

43. Additionally, based on RME's statements, prior to the Plaintiff's injury, RME staff observed that the Plaintiff was experiencing shoulder soreness, for which he saw the School nurse, and Ms. Portillo Estrada was allegedly notified.[3] However, RME only contacted Ms. Portillo Estrada regarding the Plaintiff's shoulder pain, *after* May 10, 2022. The day of the injury, Ms. Portillo Estrada received no communication regarding her son's condition.

---

[3] The Plaintiff completed a FERPA request including all documentation regarding the Plaintiff, his Mother, and School records prior to filing this action. Communications between Ms. Portillo Estrada and the School were included in the documents produced. These documents do not reference any communication between Ms. Estrada-Portillo and the School on the morning of May 10, 2022.

44. Furthermore, RME's statement represents that, after the Plaintiff's suffered his injury, he—
*somehow*—returned to his regular schedule. RME's statement does not explain how or
when the Plaintiff returned, providing only that he was observed to be "on the verge of
tears throughout the day." For this to be true, necessarily, the Plaintiff must have returned
to his regular schedule, whereupon his condition was observed by RME staff.

45. In fact, an RME teacher contacted the Plaintiff shortly after he suffered his injuries but
took no action. Rather, the Plaintiff wheeled himself back to class with broken legs, where
his extreme pain was noted by RME staff, who took no action.

46. RME's summary attempts to excuse its failure to address the Plaintiff's obvious display of
pain, by asserting that it attributed his pain to the shoulder soreness noted above. However,
despite the factual inaccuracy of this claim, RME's excuse also fails to address the fact that
it did not attempt to evaluate or treat the Plaintiff for shoulder pain after 8:15.[4]

47. RME's summary leads to several necessary conclusions. For the facts asserted in RME's
summary to be true, the following conclusions must be true as well.

1. The Defendant failed to supervise or assist the Plaintiff while transitioning between
the severe support needs ("SSN") room and homeroom on the morning of May 10,
2022.

2. The Defendant's decision to allow the Plaintiff to navigate RME facilities
independent and unsupervised, was sufficiently pervasive that it raised no red flags
to School administration.

3. The Plaintiff—after suffering fractures to both legs—took himself back to class
*unassisted*, where RME staff did not note nor address his initial absence, nor did

---

[4] RME's summary explicitly notes that "the incident happened at 8:15 a.m. This was *after* staff noticed his shoulder
was sore and he saw the nurse for his sores . . ." (emphasis added).

they investigate nor treat his obvious display of pain. RME then failed to notify Ms. Portillo Estrada of the Plaintiff's condition or take any measure to mitigate the pain he was experiencing or investigate its cause.

48. Accordingly, the Defendant, through RME, engaged in a pattern or practice, whereby, as a matter of policy, it permitted a bipedally disabled child to navigate its facilities unattended and unsupervised leading to a severe injury. That injury occurred under circumstances that should have been observed, or, at the very least, investigated. Rather, the Defendant allowed the Plaintiff to return to his regular classes, despite his condition, and failed to notify his Mother. These circumstances manifest deliberate indifference to the Plaintiff's health, wellbeing, and federally protected rights.

ii.     *The Defendant's Conduct Following the Plaintiff's Injury Constitute Deliberate Indifference to the Plaintiff's Federally Protected Rights*

49. Pursuant to RME's internal investigation, the Plaintiff's injury occurred at 8:15 am on May 10, 2022. The Plaintiff thereby spent at least the next six- and one-half hours, in pain, without support or assistance.[5] Throughout this time, RME also failed to notify Ms. Portillo Estrada.

50. Ms. Portillo Estrada did not learn that her son was experiencing significant pain until she picked him up from RME that afternoon. When Ms. Portillo Estrada contacted the Plaintiff, it was immediately apparent that he was in severe pain. Ms. Portillo Estrada questioned the Plaintiff about his condition, and he told her that he had fallen from his wheelchair. Ms. Portillo Estrada then contacted the school, reported his pain and fall, and sent the School a photo of the Plaintiff's then-current condition. *See infra* at 5, ¶ 21.

---

[5] Rocky Mountain Elementary School, "About us", available at https://rocky.adams12.org/our-school/about-us

51. RME did not respond until Ms. Portillo Estrada contacted the School again the next day, when she notified the School of his continued knee pain. *Ibid.*

52. Ms. Portillo Estrada returned the Plaintiff to school on May 12th, where his continued distress was noted, the same day he was seen by a doctor, and his bilateral fracture was diagnosed.

53. Thus, the Defendant, through RME, observed the Plaintiff in severe pain the day of the injury but took no action to investigate or mitigate his suffering. That same day the Defendant learned the Plaintiff self-reported suffering a fall while at School. Again, the Defendant took no further action. The next day, the Defendant learned that the Plaintiff continued to suffer severe knee pain. Then, on the 12th, the Defendant, again, observed swelling on the Plaintiff's knees and his continued pain.

54. At each of the points noted above, the Defendant learned critical information that it should have understood to mean that the Plaintiff had suffered a severe injury while under its care. Despite the mounting evidence, the Defendant took no action.

55. When the Plaintiff was finally released from the hospital, he still required extensive care. Ms. Portillo Estrada was required to quit her job to care for him twenty-four hours a day.

56. During this time, RME continued to take no action. In fact, RME did not even conduct an investigation into the incident until June 1, 2022, when Ms. Portillo Estrada and Ms. Sanson met with RME Principal Vogel.

57. According to RME's summary, at that point, Principal Vogel learned that the Plaintiff reported slamming into a wall while at School on May 10, 2022. Principal Vogel began an investigation, *twenty-two* days after the Plaintiff suffered his injury, and after RME not

only blamed Ms. Portillo Estrada for the Plaintiff's pain, but also *assured* her that no injury

occurred on School grounds.

58. RME's email summary also discussed next steps. The steps discussed included

modifications to the Plaintiff's existing IEP to better explain his accommodations and the

Defendant's duties:

> - The team discussed a need to strengthen the language in Esdras IEP around his need for staff support with transitions and also a plan for how to report when Esdras is not feeling well and how this will change transition protocols.

59. The Defendant had been on notice of the Plaintiff's particular disabilities and reasonable

accommodations thereto, since no later than October 28, 2020. As of that date, the Plaintiff

has been subject to an IEP, as required by the Individuals with Disabilities Education Act

("IDEA"). 20 U.S.C. § 1400 *et seq.*

60. The Plaintiff's 2020 IEP was amended on or about March 31, 2021. The Amended IEP

expressly acknowledged his disabilities, including the impairments to his functional

mobility. The March 2021 IEP explicitly noted that he uses a walker or wheelchair for

mobility and requires supervision and assistance navigating ramps and uneven terrain:

> Esdras has a new wheelchair, walker and reciprocal arm trike. Esdras is independent with advancing and negotiating his Kidwalk Mobility System and manual wheelchair within the school and home environment. This includes going up and down ramps at school. He also is independent with both the Kidwalk and wheelchair when using them outside on the playground and on varied terrain and uneven surfaces. Esdras absolutely loves to push his Kidwalk through a pile of leaves outside. Currently, he requires supervision to min assist for safety when outside or using ramps inside the hallways.

61. The Plaintiff's 2020 IEP was amended again on or about May 27, 2021. The May 2021

Amended IEP also expressly recognized that, while the Plaintiff could independently

advance and negotiate his walker and wheelchair, he required supervision and assistance

for ramps and other uneven terrain.  The May 2021 version also expressly recognized

that, as with his other mobility assistive devices, while the Plaintiff could navigate his reciprocal arm tricycle, moving up and down ramps was very challenging for him.

62. Each version of the 2020 IEP also included express accommodations requiring RME to continually monitor the Plaintiff throughout the day due to the risks posed by a shunt placed in 2019 to address his lumbar myelomeningocele.

63. Later IEPs included similar accommodations. A new IEP was developed on October 13, 2021 and amended on March 11, 2022. The March 2022 IEP *explicitly* notes that the Plaintiff required "safety monitoring from staff throughout the day due to medical, mobility, and functional issues":

> Esdras needs safety monitoring from staff throughout the day due to medical, mobility, and functional issues.

64. Accordingly, the Defendant had actual knowledge of the Plaintiff's disabilities and his need for supervision and assistance throughout the school day. According to RME's summary of the events of May 10, 2022, it did not comply its obligations under the Plaintiff's IEP.

65. Moreover, as addressed above, the fact that the Plaintiff was permitted to navigate the School unaided nor supervised, and that his necessary absence or delay following suffering the injury went unnoticed, is highly probative of the fact that RME ordinarily failed to supervise the Plaintiff. That the Plaintiff would be permitted to navigate RME's facilities alone, while the Defendant had full knowledge of his bipedal impairments and his shunt, suggests a degree of indifference that exceeds negligence. Rather, through RME, the Defendant actively failed to fulfill its obligations despite full knowledge of them and operated a pattern or practice of permitting the Plaintiff to navigate RME alone, leading to his injury.

iii.   *The Post-Injury Amendments to the Plaintiff's IEP and the Inaccuracies of Prior to his Injury Demonstrate the Defendant's Deliberate Indifference to the Plaintiff's Federally Protected Rights*

66. First, as addressed briefly above, one of the "next steps" proposed when Ms. Portillo Estrada met with RME's Principal on June 1, 2022, was to strengthen the language of the Plaintiff's IEP. This step was carried out through an IEP adopted on or about August 11, 2022.

67. The August 2022 IEP notes that the Plaintiff "requires 1:1, hands-on wheelchair assistance when he is transitioning between classes, going up and down ramps, and on the playground." The Amendment further explains that the accommodation text was changed "to more accurately detail the level of support [the Plaintiff] requires for safety in all school environments." Furthermore, the Amendment explicitly clarifies:

> **Other options considered and rationale for rejecting those options:**
> Not amending the IEP was considered.  This option was rejected because the team determined that more detailed descriptions of the level of support Esdras requires while transitioning throughout the school building and on the school grounds was required in order to ensure his safety throughout the school day.  The team also determined that Esdras would benefit from increase PT services as well as a related goal to allow him to focus on safe mobility within all school environments.

68. This Amendment, while consistent with the statements in the Plaintiff's prior IEPs, is far more specific regarding the purpose of the supervision (to protect the Plaintiff) and the level of supervision necessary.

69. The necessary conclusion from the August 2022 Amendment is that, while the Plaintiff's accommodations were known to the Defendant, they were not sufficiently fulfilled at RME prior to his injury.

70. Second, the Plaintiff's March 2022 IEP includes language supporting the conclusion that the Defendant was deliberately indifferent to the Plaintiff's disabilities and to his reasonable accommodations.

71. According to an assessment included in the IEP, the Plaintiff's functional mobility skills were reassessed in October 2021 by Penny Waggener, RME physical therapist. In her report, Ms. Waggener states that the Plaintiff "made excellent progress towards his IEP goal which was to increase his independence propelling his wheelchair up and down ramps . . ." However, the Plaintiff's actual functional mobility goal, as recorded in the March 2021 IEP was to "increase his participation, access[,] and mobility within the school environment by transferring to/from his wheelchair *to the floor and changing table* . . ." (emphasis added). The March 2021 IEP does not include any goal regarding the Plaintiff's ability to independently navigate ramps or other difficult terrain.

72. As is more troubling, the May 2021 IEP also entirely omits a functional mobility goal despite otherwise updating the Plaintiff's prior existing goals.

73. The March 2022 IEP's misrepresentation of the Plaintiff's functional mobility goal is highly concerning because the Plaintiff suffered severe injuries within two months of the day the IEP was finalized while *independently* navigating his wheelchair on a ramp.

74. Accordingly, Ms. Waggener's report corroborates the supposition that RME was not just permitting the Plaintiff to traverse ramps in his wheelchair unassisted and unsupervised but encouraging the practice as well. This apparent policy directly contradicts the accommodation that the Plaintiff was to be continuously monitored throughout the day for his safety. Monitoring that was not necessary for his mobility impairments alone, but also for critical dangers related to his shunt and other disabilities.

75.  Comparing the May 2022 IEP with its prior versions and the Amendments adopted in August 2022—after the Plaintiff's injury—the May 2022's omission of a functional

mobility goal and Ms. Waggener's report are glaring indications that the Defendant was not complying with the Plaintiff's safety-related accommodations.

76. By failing to accommodate the Plaintiff's disability, the Defendant deprived him of his equal opportunity to receive the benefits that other participants in the Defendants' programs and services receive and enjoy. By failing to accommodate the Plaintiff, despite having clear knowledge of his accommodations, as the Defendant, itself, agreed to, the Defendant manifested deliberate indifference to the Plaintiff's safety and to his federally protected rights.

77. The Defendant's actions were knowing and intentional.

78. The Defendant's acted with deliberate indifference to the Plaintiff's federally protected rights.

79. As a result of the Defendant's conduct, the Plaintiff suffered a severe injury, incurring significant treatment and rehabilitation. He has also suffered severe emotional distress, such as humiliation, frustration, anxiety, sadness, hopelessness, isolation, and other forms of mental and emotional anguish.

### III.    LEGAL CLAIMS

### COUNT I

### DEFENDANT VIOLATED SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794

80. Plaintiff incorporates, by reference, all previous paragraphs of the Complaint herein.

81. Pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its regulation "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or

be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794

82. Defendant Adams 12 is recipients of federal financial assistance and operate a public elementary or secondary education program or activity. Therefore, they are covered entities under 29 U.S.C. § 794.

83. The Plaintiff is a person with a disability within the meaning of 29 U.S.C. § 794.

84. The Defendant intentionally discriminated against the Plaintiff by failing to provide reasonable accommodations, in violation of 29 U.S.C. § 794 and its implementing regulations.

85. The Defendant intentionally discriminated against the Plaintiff by excluding him from participation in and denying him the benefits of Defendant's programs or activities solely because of his disability in violation of 29 U.S.C. § 794 and its implementing regulations.

86. Defendants have otherwise intentionally discriminated against the Plaintiff in violation of Section 504.

87. As a direct and proximate cause of Defendants' violation of Section 504, the Plaintiff has suffered and continues to suffer severe and grievous physical, mental, and emotional suffering, humiliation, stigma, and other injuries he will continue to suffer.

**COUNT II**

**DEFENDANTS VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131 *et seq.***

88. Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

89. Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

benefits of the services, programs, or actives of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (*see also* 28 C.F.R. Part 35).

90. Defendants are each a public entity subject to Title II of the ADA, 42 U.S.C. § 12132.

91. Plaintiff is a person with a disability within the meaning of 42 U.S.C. § 12102.

92. Defendants intentionally violated Plaintiff's rights under the ADA and its regulations by excluding him from participation in and denying him the benefits of Defendants' services, programs, and activities, on the basis of disability, and by subjecting him to discrimination in violation of 42 U.S.C. § 12132.

## COUNT III

### DEFENDANTS VIOLATED THE COLORADO ANTI-DISCRIMINATION ACT, C.R.S. § 24-34-801 *et seq.*

93. Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

94. The Colorado Anti-Discrimination Act ("CADA") affirms that it is the policy of the State of Colorado "[t]o encourage and enable…individuals with a disability to participate fully in social, employment, and educational opportunities… on the same terms and conditions as individuals without a disability" and "[t]hat…individuals with a disability must not be excluded, by reason of his or her disability, from participation in or be denied the benefits of the services, programs, or activities of any public entity or be subject to discrimination by any public entity." C.R.S. §24-34-801 (1)(a),(d). These rights are codified as a Civil Right in the Colorado Revised Statutes.

95. The Defendant is a public entity subject to C.R.S. §24-34-801 *et seq.* per C.R.S. §24-34-301(5.4)(b).

96. The Plaintiff is an individual with a disability under C.R.S. §24-34-301(2.5).

97. Defendants discriminated against Plaintiff in the full utilization of or benefit from the services provide and rendered by Defendants due to the Plaintiff's disability.

98. Defendants otherwise violated Plaintiff's rights under the CADA.

### IV.     PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests the following relief:

    A. Find that the Defendant violated state and federal law;

    B. Find the Plaintiff is the prevailing party;

    C. Award the Plaintiff equitable relief;

    D. Award the Plaintiff compensatory damages;

    E. Award the Plaintiff his reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and/or other applicable statutes; and

    F. Any other relief deemed necessary or appropriate.


*/s/ Conor O'Donnell*
Conor O'Donnell
Igor Raykin
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-748-8888
igor@coloradolawteam.com
conor@coloradolawteam.com
**Attorneys for Plaintiff**